**Scott Oborne, OSB #062333**
obornes@jacksonlewis.com
**Christine Slattery, OSB #132295**
christine.slattery@jacksonlewis.com
Jackson Lewis P.C.
1001 SW 5th Avenue, Ste. 1205
Portland, OR 97204
(503) 229-0404
(503) 229-0405 (facsimile)
ATTORNEYS FOR DEFENDANT
FISKARS BRANDS, INC.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| CRAIG SHELTON,<br><br>                    Plaintiff,<br><br>vs.<br><br>FISKARS BRANDS, INC., d/b/a GERBER LEGENDARY BLADES,<br><br>                    Defendant. | Case No.: 3:12-cv-01836-ST<br><br>**DEFENDANT'S MOTION AND MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>**ORAL ARGUMENT REQUESTED** |

DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT

**Jackson Lewis P.C.**
1001 SW 5th Ave., Ste. 1205
Portland OR 97204
(503) 229-0404
(503) 229-0405 (fax)

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................. 1

II.   STATEMENT OF THE CASE................................................................ 1

    A.    Shelton's Employment With Fiskars ...................................... 1

        1.    Fiskars Hires Shelton as a Regional Sales Manager For Institutional Sales 1

        2.    Shelton's Performance Shortcomings........................................ 2

        3.    Fiskars Decided to Terminate Plaintiff's Employment on February 7, 2012 .................................................................. 4

        4.    One Day *After* the Termination Decision, Shelton First Notified the Company About His Military Obligation .................................. 6

III.  SUMMARY OF ARGUMENT ................................................................ 7

IV.   LEGAL ARGUMENT................................................................ 8

    A.    Summary Judgment Standard ................................................ 8

    B.    Shelton Has the Burden of Establishing that His Military Service was a Substantial Factor in His Termination ................................ 8

    C.    Fiskars' Lack of Knowledge Regarding Shelton's Pending Military Leave Prior to the Termination Decision Is Fatal to the USERRA Claim .................................. 9

    D.    There Is No Circumstantial Evidence Suggesting That Fiskars' Decision to Terminate Shelton's Employment was Motivated by Discriminatory Animus.... 11

    E.    Shelton's Claim Under Oregon's Anti-Discrimination Statute Similarly Fails.... 12

    F.    Shelton's Wrongful Discharge Claim Is Baseless Due to Consistent Remedial Schemes ................................................................ 13

V.    CONCLUSION................................................................ 13

VI.   CERTIFICATE OF COMPLIANCE................................................ 14

**Jackson Lewis P.C.**
1001 SW 5th Ave., Ste. 1205
Portland OR 97204
(503) 229-0404
(503) 229-0405 (fax)

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<span style="font-variant: small-caps;">Cases</span>

*Arnoth v. DHL Express (U.S.A.), Inc.*,
  2010 U.S. Dist. LEXIS 18524 (D. Or. Mar. 2, 2010) ............................................11

*Bills v. Aseltine*,
  958 F.2d 697 (6th Cir. 1992) ...................................................................10

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)..............................................................................8

*Clark County School Dist. v. Breeden*,
  532 U.S. 268, 121 S. Ct. 1508 (2001).........................................................10

*Cohen v. Fred Meyer, Inc.*,
  686 F.2d 793 (9th Cir. 1982) ..................................................................9

*Dameworth v. Linn-Benton Community College*,
  2007 U.S. Dist. LEXIS 73062 (D. Or. Sept. 27, 2007).........................................9

*Darensburg v. Metro. Transp. Comm'n*,
  636 F.3d 511 (9th Cir. 2011) ..................................................................12

*Erickson v. U.S. Postal Serv.*,
  *571 F.3d 1364 (2009)* .........................................................................9

*Farrimond v. Louisiana-Pacific Corp.*
  103 Or. App. 563, 798 P2d 697 (1990)........................................................13

*Fenton v. HiSAN, Inc.*,
  174 F.3d 827 (6th Cir. 1999) ..................................................................10

*Hill v. Michelin N. Am., Inc.*,
  252 F.3d 307 (4th Cir. 2001) ..................................................................8

*Kotelnikov v. Portland Habilitation Ctr.*,
  545 F. Supp. 2d 1137 (D. Or. 2008) ..........................................................11

*Lawson v. Walgreen Co.*,
  2009 U.S. Dist. LEXIS 25441 (D. Or. March 20, 2009) ........................................9

*Leisek v. Brightwood Corp.*,
  278 F.3d 895 (9th Cir. 2002) ..................................................................9

DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT - ii

**Jackson Lewis P.C.**
1001 SW 5th Ave., Ste. 1205
Portland OR 97204
(503) 229-0404
(503) 229-0405 (fax)

*Manatt v. Bank of Am., N.A.*,
   339 F.3d 792 (9th Cir.2003) ...........................................................................11

*Moore v. Potter*,
   2010 U.S. Dist. LEXIS 107611 (D. Or. Oct. 6, 2010) ................................9

*Mulhall v. Ashcroft*,
   287 F.3d 543 (6th Cir. 2002) ......................................................................9,10

*Olsen v. Deschutes County*,
   204 Or App 7 (2006) ....................................................................................13

*Patton v. J. C. Penney Co.*,
   301 Or. 117, 719 P.2d 854 (1986) ..............................................................13

*Raad v. Fairbanks N. Star Borough Sch. Dist.*,
   323 F.3d 1185 (9th Cir. 2003) ......................................................................9

*Scott v. Eastman Chem. Co.*,
   275 F. App. 466, 482 (6th Cir. 2008)...........................................................10

*Sheehan v. Dep't of Navy*,
   240 F.3d 1009 (2001)....................................................................................9

*Soremekun v. Thrifty Payless, Inc.*,
   509 F.3d 978 (2007)......................................................................................12

*Stegall v. Citadel Broad. Co.*,
   350 F.3d 1061 (Cal. 9th Cir. 2004)...............................................................11

*Vasquez v. County of Los Angeles*,
   349 F.3d 634 (9th Cir. 2004) ........................................................................9

*Ventura v. Johnson Controls, Inc.*,
   2010 U.S. Dist. LEXIS 97365 (D. Or. Sept. 16, 2010).................................11

*Village of Arlington Heights v. Metro. Housing Dev. Corp.*,
   429 U.S. 252, 97 S. Ct. 555, 50 L. Ed. 2d 450 (1977).................................12

**STATUTES**

38 U.S.C. § 4301(a)(3)..........................................................................................8

38 U.S.C. § 4311(c) ..............................................................................................9

38 U.S.C. § 4323(h) ..............................................................................................13

ORS 659A.082.......................................................................................................12

**Jackson Lewis P.C.**
1001 SW 5th Ave., Ste. 1205
Portland OR 97204
(503) 229-0404
(503) 229-0405 (fax)

ORS 659A.082(4) ..........................................................................................................12

ORS 659A.885 ..............................................................................................................13

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(c) .....................................................................................................8

Fed. R. Civ. P. 56(e) .....................................................................................................8

DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT - iv

**Jackson Lewis P.C.**
1001 SW 5th Ave., Ste. 1205
Portland OR 97204
(503) 229-0404
(503) 229-0405 (fax)

## CERTIFICATE REQUIRED BY L.R. 7.1(a)

Pursuant to Local Rule 7-1(a)(1), the undersigned counsel certifies that Defendant's counsel conferred with Plaintiff's counsel regarding the issues raised by this motion. No agreement could be reached without intervention of this Court.

## MOTION

Defendant Fiskars Brands, Inc. ("Fiskars") hereby moves for Summary Judgment in its favor and against Plaintiff Craig Shelton. Summary judgment is appropriate because no genuine issues of material fact exist and Defendant is entitled to judgment as a matter of law.

## I.    INTRODUCTION

In his Complaint, Plaintiff Craig Shelton ("Shelton") alleges that he was terminated in violation of the Uniform Services Employment and Reemployment Rights Act (USERRA) and USERRA's Oregon state law counterpart. Shelton also alleges his discharge constituted a common law wrongful discharge. As demonstrated below, Fiskars management made the challenged termination decision before having any knowledge of the military leave at issue. As a result, Shelton's military obligations **could not have been a factor** in Fiskars' decision to terminate Shelton's employment and, thus, his claims fail as a matter of law.

## II.   STATEMENT OF THE CASE

### A.    Shelton's Employment With Fiskars

#### 1.    Fiskars Hires Shelton as a Regional Sales Manager For Institutional Sales

Gerber Legendary Blades ("Gerber") is a Fiskars sub-division that manufactures and sells consumer knives, multi-tools, and other equipment for outdoor enthusiasts and uniformed professionals and soldiers. On July 6, 2011, Fiskars hired Shelton as a Regional Sales Manager

DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT - 1

**Jackson Lewis P.C.**
1001 SW 5th Ave., Ste. 1205
Portland OR 97204
(503) 229-0404
(503) 229-0405 (fax)

(RSM) for Institutional Sales in the Gerber division.  Deposition of Brent Bateman ("Bateman Dep."), p. 118, attached as Exhibit A to the Declaration of Scott Oborne filed herewith ("Oborne Dec.").  Shelton was as an active member of the military, which was a positive factor in the hiring decision.  Deposition of Jason Landmark, p. 24, attached as Exhibit D to Oborne Dec. Vice President of Institutional Sales, Brent Bateman, supervised Shelton's employment. Bateman Dep., pp. 52 and 105.  Bateman is a former member of the Oregon Army Guard. Bateman Dep., p. 61.

## 2.    Shelton's Performance Shortcomings

In his capacity as an RSM for institutional sales, Shelton was responsible for working directly with institutional clients to sell Gerber products.  Bateman Dep., pp. 90-93.  While Shelton contends he performed his job competently, Fiskars management points to several performance shortcomings that ultimately led to Shelton's employment termination.[1] Specifically, Fiskars contends Shelton sold non-compliant products to his institutional accounts, kept an inordinate amount of sample products in his possession, and was distributing excessive sample products.  *See* Bateman Dep., pp. 90-93, 131, and 144-46.  Shelton was also repeatedly criticized for his sales presentation skills, written communication skills, knowledge of Fiskars' products, and failure to properly note his absences on the Fiskars' team calendar.  *See* Bateman Dep., pp. 113-15, 130-131, 149-50, 152, and 158-60.

In late 2011, as Bateman's concerns regarding Shelton's job performance were becoming more pronounced, Bateman met with Human Resources Vice President Kirsten Alvares about his reservations.  Deposition of Kirsten Alvares ("Alvares Dep."), p. 81, attached as Exhibit B to

---

[1]    Defendant acknowledges the disputed nature of Shelton's job performance.  As such, this dispositive motion is not based on Shelton's performance shortcomings, but rather on the undisputed nature of when the termination decision was made in relation to the subsequent notice of leave.

DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT - 2

Oborne Dec.    In late January 2012, Bateman and Shelton met to discuss his year-end performance review.    Bateman Dep., p. 96-97.    At that time, Bateman discussed various performance issues with Shelton, as outlined above, and was concerned that Shelton's self-evaluation was far more positive than Bateman's evaluation of Shelton's job performance. Bateman Dep., pp. 96-98.

Shelton was scheduled to go on a business trip the day after he and Bateman met regarding his performance review.    Bateman Dep., p. 149-50.    Because of his concerns regarding Shelton's job performance, Bateman asked Shelton to forward him the sales presentation that Shelton was scheduled to deliver to one of the customers he would be visiting.    *Id.*    The presentation was replete with errors, including misinformation about products, inaccurate sales data, and several careless drafting mistakes.    Deposition of Craig Shelton ("Shelton Dep."), p. 159, attached as Exhibit C to Oborne Dec.    Bateman told Shelton to fix the problems and expressed his concern about what Shelton had intended to present to the customer.    *Id.*    Bateman also told Shelton that when giving the presentation, he was required to use either a printed copy or a PowerPoint presentation using Audio Visual projection equipment.    *Id.*

On February 6, 2012, Bateman met with Shelton about his sales trip the prior week. Bateman Dep., p. 154.    After the meeting concluded, Bateman asked Shelton to meet the following day and provide Bateman with electronic call reports, a trade show report, and a copy of the PowerPoint presentation Shelton had presented to the client.[2]    Bateman Dep., p. 154-55 and 158.    Due to his concerns about Shelton's ability to give a persuasive and accurate sales presentation, Bateman asked Shelton to present the presentation to him during the meeting as if Bateman were the customer.    Bateman Dep., pp. 21-22, and 165-66; Shelton Dep. 219.

---

[2]    Bateman was so concerned about Shelton's performance, that he asked Shelton to schedule meetings with him every day that week.  Bateman Dep., p. 157.

**Jackson Lewis P.C.**
1001 SW 5th Ave., Ste. 1205
Portland OR 97204
(503) 229-0404
(503) 229-0405 (fax)

When Plaintiff gave Bateman the written materials for the presentation, Bateman was dismayed to see that Shelton had not corrected the misinformation as he had previously been directed. Bateman Dep., pp. 165-66. During the presentation that followed, Shelton was unable to answer basic questions posed by Bateman about Gerber's product lines, underscoring Bateman's concern that Shelton was likely giving customers misinformation about the very products he was selling. Bateman Dep., pp. 165. Bateman also learned that, contrary to his specific direction, Shelton had not given the customers hard copies of the presentation, nor had he delivered a proper PowerPoint presentation. Bateman Dep., pp. 159-160, and 165-66.

### 3. Fiskars Decided to Terminate Plaintiff's Employment on February 7, 2012

After meeting with Shelton during the afternoon of February 7, 2012, Bateman began writing an email to Shelton outlining all of the deficiencies in his presentation. Bateman Dep., pp. 21-26 and 165-66, Ex. 47. In the midst of drafting that email, Bateman came to the realization that Shelton was not capable of doing the job for which he had been hired, and made the decision to seek approval for Shelton's employment termination. *Id*. Bateman got up from his desk and went to the office of Gerber President Jason Landmark to discuss terminating Shelton's employment. Bateman Dep., p. 167; Landmark Dep., p. 26. Frustrated about his meeting with Shelton, and embarrassed by Shelton's poor performance, Bateman explained to Landmark that Shelton was incapable of performing his job and asked for Landmark's approval to terminate Shelton's employment. Bateman Dep., p. 167; Landmark Dep., p. 31. Landmark approved Bateman's decision, stating that if Shelton was not capable, the company needed to "get rid of him." Bateman Dep., p. 168. Landmark then told Bateman to relay the termination decision to Vice President of Human Resources, Kirsten Alvares. *Id*.

DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT - 4

Bateman promptly walked down the hall to Alvares' office and asked if he could speak with her.  Alvares Dep., p. 62.  Alvares was available, so she and Bateman sat down and had a meeting in which they discussed Bateman's decision to terminate Shelton's employment.  *Id.* Bateman explained that he had a meeting with Shelton earlier that day and, despite his best efforts to work with Shelton and help him become a competent and productive employee, it was clear to Bateman that it was time to terminate Shelton's employment.  *Id.*, p. 63.  Alvares asked Bateman if Shelton could benefit from additional counseling or feedback.  *Id.*  Bateman explained that he did not believe that Shelton would benefit from additional counseling or feedback and termination was necessary.  *Id.*

Because Bateman was confident in his decision to terminate Shelton's employment, Alvares agreed that they should move forward with the termination.  *Id.*, p. 64.  At that point, they discussed the termination process, including processing Shelton's final paycheck.  *Id.* Because payroll is done out of a shared services office in another state, Bateman and Alvares determined that Shelton's actual separation date would be February 10, 2012, so that his final paycheck could be processed as part of a regular payroll run.  Alvares Dep., p. 64.  Shelton and Alvares then discussed the importance of gathering as much information as possible from Shelton regarding his customers and projects in order to ensure that there was no lapse in customer service following his termination.  *Id.*, pp. 64-65.  Their meeting ended between 5:30 and 6:00 pm. on February 7, 2012.  *Id.,* at 65.  After speaking with Alvares, Bateman went back to his office, shut down his computer, and went home for the day – again on February 7, 2012. Bateman Dep., p. 168.

**Jackson Lewis P.C.**
1001 SW 5th Ave., Ste. 1205
Portland OR 97204
(503) 229-0404
(503) 229-0405 (fax)

**4.    One Day *After* the Termination Decision, Shelton First Notified the Company About His Military Obligation**

According to Shelton, on the evening of February 7, 2012, he received a voice mail from his commanding officer Sergeant Major Nathan Smith, alerting him that he had military leave starting less than 48 hours later on February 9, 2012.  Shelton Dep., p. 225.  Shelton did not inform anyone at Fiskars of his upcoming military leave until the next morning.  Shelton Dep., pp. 226-27.  At approximately 8:30 a.m. on February 8, 2012, in a somewhat chance encounter by Shelton's office, Shelton told Bateman that he needed military leave starting the next day, February 9, 2012, through February 14, 2012.  Bateman Dep., pp. 13, 15, 17, 27, and 170.  Given the timing of the orders in relation to Bateman's pointed criticism of Shelton's job performance the previous afternoon, Bateman became concerned about the validity of Shelton's military leave orders.  Bateman Dep., pp. 17, 28, 32-33, and 171-73.  As a result, Bateman asked Shelton for a copy of the orders.  Bateman Dep., pp. 17, 28, 32-33, and 171-73, Alvares Dep., pp. 66-67.

On February 8, 2012, Bateman emailed Alvares about Shelton's military orders, noting that having Shelton gone for that period of time was "unexpected" and the "timing [was] horrible."  Bateman Dep., p. 14, Ex. 62.  Bateman further indicated that he intended to contact Shelton's commanding officer to verify the validity of the orders.  Bateman Dep., pp. 13-14.  Bateman's main concern was that Shelton may have orchestrated the military leave orders in an effort to avoid his expected termination.  Bateman Dep., pp. 13-15, 17, and 173.

The same day, Bateman emailed Shelton, indicating that he would like to speak with Shelton's commanding officer in order to explain that receiving order with such short notice placed a heavy burden on Fiskars.  Bateman Dep., p. 172, Ex. 62.  Although Bateman and Landmark had already made the decision to terminate Shelton's employment, Bateman also wanted to speak to Shelton's commanding officer to determine whether Shelton's orders were

DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT - 6

**Jackson Lewis P.C.**
1001 SW 5th Ave., Ste. 1205
Portland OR 97204
(503) 229-0404
(503) 229-0405 (fax)

valid and whether Shelton had volunteered for duty in an effort to "avoid hot water" following his difficult conversation with Bateman the afternoon prior.  Bateman Dep., pp. 14, 17, 171, and 173.  Shelton provided Bateman with a copy of his orders.  Shelton Dep., p. 224, Ex. 48.

Bateman called Shelton's commanding officer in an effort to gain clarification of whether the training was truly required and why such short notice was provided.  Bateman Dep., pp. 33-34 and 175-77.  Not only was Bateman suspicious of the timing of these orders, he was frustrated that Shelton received these orders on the heels of Bateman's decision to terminate Shelton's employment.  *Id*.  During their conversation, Smith apologized for the short notice, and indicated that the training was not voluntary.  *Id.*  Ultimately, Shelton attended the training.  Though the decision to terminate Shelton's employment occurred before he requested military leave, Shelton's actual termination did not occur until February 17, 2012, three days after his return from leave.  Bateman Dep., pp. 189-91; Alvares Dep., pp. 72-73.

## III.    SUMMARY OF ARGUMENT

Shelton concedes he was not discriminated against as a result of his general status as a member of the military reserves or any leave request, other than his request for leave between February 9, 2012 and February 14, 2012.  Shelton Dep., pp. 164-65.  There is also no dispute that Fiskars accommodated all of Shelton's military leave requests, including his request for leave in February 2012.  Shelton further concedes he did not provide anyone at Fiskars with notice of his February 2012 leave until February 8, 2012.  Finally, it is undisputed that the decision to terminate Shelton's employment was made on February 7, 2012, one day before Shelton informed Fiskars about his pending need for leave.  As a result, Shelton's military service could not have had any influence on Fiskars' decision to terminate his employment and his claims must be dismissed as a matter of law.

**Jackson Lewis P.C.**
1001 SW 5th Ave., Ste. 1205
Portland OR 97204
(503) 229-0404
(503) 229-0405 (fax)

IV.        **LEGAL ARGUMENT**

A.        **Summary Judgment Standard**

Summary judgment is not a disfavored procedural shortcut; rather, where appropriate, it furthers the just and speedy determination of an action. *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986).   Summary judgment for Fiskars is proper in this matter since "the pleadings, the discovery and disclosure materials on file … show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c).  There is no genuine issue of material fact if the nonmoving party fails to make a sufficient showing on an essential element of its case as to which it would have the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

Fiskars need not negate Shelton's claims, but only establish an absence of evidence to support them. *Celotex,* 477 U.S. at 322.  Once Fiskars satisfies its burden, Shelton may not rest on mere allegations or denials but, rather, must present evidence demonstrating a triable issue of fact. *Id.*  To sustain his burden, Shelton must adduce relevant, admissible evidentiary matter setting forth specific facts. Fed. R. Civ. P. 56(e).  Testimony and affidavits that "merely reiterate allegations made in the complaint, without providing specific factual information made on the basis of personal knowledge" are insufficient.  Where, as here, Shelton cannot meet this burden, summary judgment must be granted.

B.        **Shelton Has the Burden of Establishing that His Military Service was a Substantial Factor in His Termination**

The Uniform Service Employment and Reemployment Rights Act (USERRA) prohibits employment discrimination against military personnel based on their military service. *Hill v. Michelin N. Am., Inc.*, 252 F.3d 307, 311 (4th Cir. 2001) (quoting 38 U.S.C. § 4301(a)(3))

**Jackson Lewis P.C.**
1001 SW 5th Ave., Ste. 1205
Portland OR 97204
(503) 229-0404
(503) 229-0405 (fax)

(internal quotation marks omitted).  USERRA, by its own terms, establishes a two-step burden-shifting framework by which to analyze claims.

A plaintiff alleging the discriminatory act bears the initial burden of showing that "military service was a substantial or motivating factor in the adverse employment action." *Leisek v. Brightwood Corp.*, 278 F.3d 895, 899 (9th Cir. 2002) (citing *Sheehan v. Dep't of Navy*, 240 F.3d 1009, 1013 (2001)).  Only if a plaintiff meets the prima facie burden does the burden of proof shift to the employer, which must prove that it would have taken the adverse action for non-discriminatory reasons, regardless of the employee's military service.  *Leisek*, 278 F.3d at 898-99 (citing *Sheehan,* 240 F.3d 1009 at 1013 (2001); *Erickson v. U.S. Postal Serv., 571 F.3d 1364, 1368 (2009))*; *see also* 38 U.S.C. § 4311(c).[3]

### C.  Fiskars' Lack of Knowledge Regarding Shelton's Pending Military Leave Prior to the Termination Decision Is Fatal to the USERRA Claim

To establish actionable retaliation, the employer must have knowledge of the plaintiff's protected activity.  *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982) ("Essential to a causal link is evidence that the employer was aware that the plaintiff had engaged in the protected activity."); *Moore v. Potter*, 2010 U.S. Dist. LEXIS 107611 (D. Or. Oct. 6, 2010); *Dameworth v. Linn-Benton Community College*, 2007 U.S. Dist. LEXIS 73062 (D. Or. Sept. 27, 2007) (quoting *Cohen*, 686 F.2d at 796)); *See also Lawson v. Walgreen Co.*, 2009 U.S. Dist. LEXIS 25441 (D. Or. March 20, 2009); *Vasquez v. County of Los Angeles*, 349 F.3d 634, 639 (9th Cir. 2004) (Employer's knowledge of protected activity necessary for causation); *Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003) (Employer's knowledge of protected activity necessary for causation); *Mulhall v. Ashcroft*, 287 F.3d 543,

---

[3]    Because Shelton's claims fail at the initial "motivating factor" level, the Court need not reach the second step of the USERRA burden-shifting analysis.

DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT - 9

Jackson Lewis P.C.
1001 SW 5th Ave., Ste. 1205
Portland OR 97204
(503) 229-0404
(503) 229-0405 (fax)

551-52 (6th Cir. 2002); *Fenton v. HiSAN, Inc.*, 174 F.3d 827, 832 (6th Cir. 1999).  An employer "cannot retaliate against an employee for engaging in a protected activity unless he **knew** the employee had done so."  *Scott v. Eastman Chem. Co.*, 275 F. App. 466, 482 (6th Cir. 2008); *see also Clark County School Dist. v. Breeden*, 532 U.S. 268, 273, 121 S. Ct. 1508 (2001). Knowledge may be inferred from evidence in the record, but such inferences must be reasonable ones. *Bills v. Aseltine*, 958 F.2d 697, 708 (6th Cir. 1992).

Here, Shelton's case fails at the prima facie level.  It is undisputed that the decision to terminate Shelton's employment was made on February 7, 2012, the day before he informed Fiskars of his military orders.  Bateman Dep., p. 13 ("I had made the determination to terminate Mr. Shelton on February 7th [and] I got notification of military duty on the 8th."); *Id.*, p. 15 ("I made the decision Mr. Shelton was not capable of doing the job, and to terminate him after a meeting on the 7th."); *Id.*, p. 17 ("…I chose to terminate Mr. Shelton on the 7th."); *Id.*, p. 21 ("I had a meeting with Mr. Shelton on the 7th…and, at that point in time, determined he wasn't capable of doing the job."); *Id.*, p. 165 ("I made the decision to terminate Mr. Shelton on February 7th."); *Id.*, p. 173 ("I wasn't happy that, after his colossal failure in the presentation on the 7th, and I'd decided to terminate him, that at 8:30 the next morning, he all of a sudden had [military] duty…and was going to be gone."); Alvares Dep., p. 62 (On February 7, 2012, Bateman told her that "he felt it was time to terminate [Shelton]."); *Id.*, p. 67 ("[w]e had decided to terminate [Shelton's] employment the evening before[, February 7, 2012]."); *Id.*, p. 83 ("…we made the decision to let him go on…February 7th);  Landmark Dep., p. 35-36 (Fiskars delayed the planned termination because they received notice of Shelton's military orders.); *Id.*, p. 34 (At

**Jackson Lewis P.C.**
1001 SW 5th Ave., Ste. 1205
Portland OR 97204
(503) 229-0404
(503) 229-0405 (fax)

the end of his conversation with Bateman regarding Shelton's termination, Landmark instructed Bateman to discuss the termination decision with Alvares.[4])

Because the undisputed evidence is that Fiskars made the decision to terminate Shelton's employment before it learned of his military obligation, his February 8, 2012 orders could not have been a motivating factor in Fiskars' decision to terminate Shelton's employment.

> **D.    There Is No Circumstantial Evidence Suggesting That Fiskars' Decision to Terminate Shelton's Employment was Motivated by Discriminatory Animus**

Because Fiskars made the termination decision the day before it received notice of Shelton's military orders, Shelton's claims fail at the prima facie level.  Fiskars anticipates, however, that Shelton may attempt to point to speculation in an effort to satisfy his initial burden. Because Shelton can rely on nothing but his own speculation, his effort to demonstrate discriminatory animus using circumstantial evidence must fail.

Of course, discrimination may be proven through circumstantial evidence.  That said, such evidence must be "specific and substantial, and timing alone is insufficient."[5]  *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1065-66, 1070 (Cal. 9th Cir. 2004); *See also Manatt v. Bank of Am., N.A.*, 339 F.3d 792, 801 (9th Cir.2003) (affirming summary judgment for employer where plaintiff "failed to introduce any direct or specific and substantial circumstantial evidence of pretext.")  Conclusory statements and speculation are insufficient to raise a genuine issue of

---

[4]    While Landmark could not specifically recall the date of the termination decision during his April 4, 2013 deposition, his testimony is entirely consistent with and bolsters the testimony of Bateman and Alvares.  Landmark confirms that after Bateman informed him of the decision to terminate Shelton's employment, he instructed Bateman to speak to Alvares.  All three deponents agree that this was the day before Shelton informed Fiskars of his February 8, 2012 military orders.

[5]    Those cases holding that temporal proximity may allow an inference of causation have generally recognized that timing alone is insufficient to create a material issue of fact for trial.  *See Ventura v. Johnson Controls, Inc.*, 2010 U.S. Dist. LEXIS 97365 (D. Or. Sept. 16, 2010) (evidence of temporal proximity is insufficient to carry the plaintiff's burden "of establishing a triable issue of fact on the ultimate question of retaliation")); *see also Arnoth v. DHL Express (U.S.A.), Inc.*, 2010 U.S. Dist. LEXIS 18524, at *22 (D. Or. Mar. 2, 2010) (*citing Kotelnikov v. Portland Habilitation Ctr.*, 545 F. Supp. 2d 1137 (D. Or. 2008)).

**Jackson Lewis P.C.**
1001 SW 5th Ave., Ste. 1205
Portland OR 97204
(503) 229-0404
(503) 229-0405 (fax)

fact and defeat summary judgment. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (2007); *Darensburg v. Metro. Transp. Comm'n*, 636 F.3d 511, 522 (9th Cir. 2011) (*citing Village of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 266, 97 S. Ct. 555, 50 L. Ed. 2d 450 (1977)).

Here, Shelton may point to the timing of Shelton's termination in relation to his military leave. But as outlined more fully above, the temporal proximity is coincidental – the decision to terminate Shelton's employment occurred prior to Fiskars learning of Shelton's military obligation.

Shelton may also point to Bateman's February 8, 2012 email to Alvares, in which Bateman states that he had been working closely with Shelton on his business plan. Similarly, Shelton may attempt to point to Bateman's frustrated conversation with Sergeant Major Nathan Smith in which he attempted to verify the validity of the orders. But this evidence is neither "specific" nor "substantial" evidence that the decision to terminate Shelton's employment had not already been made; instead, it is purely speculative and is directly contrary to the undisputed testimony of Bateman, Alvares, and Landmark. Shelton cannot rely on mere speculation to carry his prima facie burden.

### E.    Shelton's Claim Under Oregon's Anti-Discrimination Statute Similarly Fails

Oregon law prohibits employers from discriminating against an individual who is or was a member of the federal uniformed services, the National Guard, or the military reserves, or who applies to become a member of any of these uniformed services. ORS 659A.082. To the extent possible, these protections are to be construed consistently with USERRA. ORS 659A.082(4). For all of the reasons Shelton's cause of action under USERRA fails, his Oregon state discrimination claim must also fail.

DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT - 12

**Jackson Lewis P.C.**
1001 SW 5th Ave., Ste. 1205
Portland OR 97204
(503) 229-0404
(503) 229-0405 (fax)

**F.      Shelton's Wrongful Discharge Claim Is Baseless Due to Consistent Remedial Schemes**

The tort of wrongful discharge is an exception to the usual rule that, in Oregon, at-will employees can be discharged at any time for any reason. *Patton v. J. C. Penney Co.*, 301 Or. 117, 120, 719 P.2d 854 (1986).  However, a claim for wrongful discharge is not available in Oregon if: (1) an existing remedy adequately protects the public interest in question; or (2) the legislature has intentionally abrogated the common-law remedies by establishing an exclusive remedy regardless of whether the courts perceive that remedy to be adequate.  *Olsen v. Deschutes County*, 204 Or App 7, 14 (2006) (A common law wrongful discharge claim is not available if an existing remedy adequately protects the public interest in question); *See also Farrimond v. Louisiana-Pacific Corp.* 103 Or. App. 563, 567, 798 P2d 697 (1990) ("the legislature's adoption of virtually all remedies that would have been available at common law lead us to conclude that it intended the statutory remedy to be exclusive").

Here, Shelton is already fully protected by USERRA and Chapter 659A.  In fact, Chapter 659A and USERRA provide broader remedies, as they provide for the recovery of attorney fees, whereas the claim of wrongful discharge does not.  *See* ORS 659A.885; 38 U.S.C. § 4323(h).

**V.      CONCLUSION**

For these reasons, Defendant's Motion for Summary Judgment should be granted.

DATED:  September 25, 2014                        RESPECTFULLY SUBMITTED,

                                                 JACKSON LEWIS P.C.


                              By:    _____
                                             *s/Scott Oborne*
                                     Scott Oborne, OSB #062333
                                     Christine A. Slattery, OSB #132295
                                     Attorneys for Defendant Fiskars Brands, Inc.


DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT - 13

**VI.**       **CERTIFICATE OF COMPLIANCE**

This Memorandum complies with the applicable word-count limitation under LR 7-2(b) because it contains 4192 words (including headings, footnotes and quotations, but excluding the caption, table of contents, table of authorities, signature block and any certificates of counsel).

DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT - 14

**Jackson Lewis P.C.**
1001 SW 5th Ave., Ste. 1205
Portland OR 97204
(503) 229-0404
(503) 229-0405 (fax)

## DECLARATION OF SERVICE

I hereby declare that on September 25, 2014, I electronically filed the foregoing **DEFENDANT'S MOTION AND MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system which will send notification to the following:

James W. Beck
Gordon, Thomas, Honeywell, Malanca,
Peterson & Daheim LLP
1201 Pacific Avenue, Ste. 2100
Tacoma, WA 98401-1157
jbeck@gth-law.com

DATED the 25th day of September, 2014 at Portland, Oregon.


_____*s/ Julie Dod*_____
Julie Dod

4845-1936-1054, v. 1

DECLARATION OF SERVICE

**Jackson Lewis P.C.**
1001 SW 5th Ave., Ste. 1205
Portland OR 97204
(503) 229-0404
(503) 229-0405 (fax)